SUPREME COURT. New York General Term, November, 1858. *Davies, Sutherland* and *Hogeboom*, Justices.

PETER FRANCISCO, plaintiff in error, *v.* THE PEOPLE, defendants in error.

A pilot, within the meaning of chap. 69 of the Laws of 1847, regulating Hellgate pilots, is the person piloting and directing the vessel while on board of it. t is no offence against the act for the pilot of a steam tug to take a schooner through Hellgate, lashed to the side of the steam tug, the pilot of the steam tug remaining on his own steamer, and making signals to those on board the schooner to change their helm to conform to the movements of the steamer.

It is erroneous, in such a case, to charge, that in so towing the schooner through Hellgate the pilot of the steam tug was committing an act of pilotage.

Steamboats have a right to tow vessels through Hellgate without being subject to the law relating to pilotage, being excepted from its operation by the 10th section of the act of 1847.

CERTIORARI to the General Sessions of the Peace of the city and county of New York.

The plaintiff in error was the pilot of the steam tug H. Minturn, and was indicted and convicted in the court below of a misdemeanor, in violating the provisions of the statute that prohibits any person, except a licensed pilot, piloting a vessel through Hellgate. It was proved on the trial that on the 7th of May, 1857, two schooners, the George and the Humming Bird, were lashed to the steam tug Minturn, one on each side, and thus taken through Hellgate by the defendant, he being on the steamboat piloting it, and making signals to those on board the schooners to change their helms to conform to the movements of the steamer.

The counsel for the defendant asked the Recorder to charge the jury that if they believed the act done by the defendant on this occasion was one of towage only, that the defendant must be acquitted, for the offence was not one contemplated by the act. The judge so charged, but with this qualification, that if the defendant directed and controlled the movements of the

steamer, and was the controlling spirit, then the act was one of pilotage, to which the defendant's counsel excepted.

The counsel for the defendant also asked the Recorder to charge that the steam tug Minturn, being a steamboat propelled by steam, had a right to tow vessels through Hellgate without being subject to the laws relating to pilotage. The Recorder refused so to charge, and the defendant's counsel excepted.

*D. McMahon*, for the defendant

*John McKeon*, for the People.

*By the Court*, DAVIES, P. J. The appellant was indicted in the General Sessions, and convicted of a misdemeanor, in violating the provisions of chap. 69, Laws of 1847, relating to the Hellgate pilots.

That act provides that there shall be appointed by the Governor and Senate, fit and proper persons to act as pilots for the safe pilotage of vessels through the channel of the East river, commonly called Hellgate. The act provides for compensation for such service, and also provides that any pilot who shall first tender his services to any vessel passing through the gate, and whose services shall not be accepted, shall be entitled to demand and receive half-pilotage.

The act further provides, that if any person other than a Hellgate pilot shall pilot for any other person any vessel of any description through the channel of the East river, commonly called Hellgate, he shall forfeit and pay the sum of thirty dollars for each offence, or, on conviction thereof, shall be deemed guilty of a misdemeanor, and shall be punished as such; and the act also declares that it shall not be construed as applying to steamboats.

It is conceded that the piloting of the steamer was no offence under the act, for it is expressly excepted from its provisions. But it is insisted, on the part of the People, that the act of taking the two schooners through the channel in the

Francisco *v.* The People.

manner stated, was an act of pilotage within the meaning of the act, and which it has made an offence.

The duties of the pilots authorized by the acts to be appointed and to act as pilots, for the safe pilotage of vessels through the channel commonly called Hellgate, are prescribed by law; and any person not such pilot, who shall pilot any vessel, is made subject to the penalties of the act. *Bouvier's Law Dictionary* (*vol.* 2, 337) defines a pilot to be: first, an officer serving on board of a ship during the course of a voyage, and having the charge of the helm and of the ship's route; and secondly, an officer authorized by law, who is taken on board at a particular place for the purpose of conducting a ship through a river, road or channel, or from or into a port.

This definition would seem to carry the idea that the pilot is to be put on board the ship piloted—that he is not, in the legal sense, a pilot unless on board the ship which he is conducting through a river or channel. Could he be said to be a pilot if he stood on the shore and directed the course of the vessel by signals, or ran along the banks of the stream and by words or signs controlled and directed the course of the vessel navigating the stream? We think not; and that the intendment of the act was to apply to the pilots on board, piloting and directing the ship or vessel while on board of it. The defendant was conducting the steam-tug through the channel of the East river, as he lawfully might do. The two schooners which it is claimed he piloted, were lashed to the steamboat, and must necessarily obey its every motion. As a consequence, they were piloted through the channel, and so they would have been if placed on the deck of the steamer. It is true the persons on the schooners had to obey and did obey signals given to them by the defendant while on board the steamer. He might have given the same if on the land; but we do not see that this circumstance determines that he was piloting the schooners.

We have not seen any decision of our courts upon the proper construction to be given to this statute, upon the point now presented for consideration. But a case has been decided

by the English Court of Exchequer, upon a similar statute, which seems to us of high authority and quite controlling. The language of the English statute is (6 *Geo., 4th chap.* 125, § 70): "Every person assuming or continuing to act *in the charge or conduct of any ship or vessel,* without being a licensed pilot, after any licensed pilot shall have offered to take charge of such ship or vessel, shall forfeit," &c.

It will be seen that the language of this statute is more comprehensive than ours, and is not so technical in the terms used. Ours is "to pilot," or "piloting;" theirs, "to act in the charge or conduct of any ship or vessel." *Reilly* v. *Scott* (7 *Meeson & Welshy's Rep.,* 93), was an action to recover a penalty incurred under this statute, for doing an act like that for which the defendant in this case has been convicted of a misdemeanor.

Baron Parke, in delivering the opinion of the court, says: "The first question arising in this case is, whether the defendant had charge of the ship within the meaning of the pilot act. We are of the opinion that he had not. These words are to be understood in the sense ascribed to them in other parts of the act; that is, they mean the taking the charge and direction *as a pilot,* whose appropriate and indeed sole duty is to select the course and take the management and conduct of the vessel, for the purpose of directing her in that course. The master of a coasting vessel may, if he please, perform that duty himself; but if he chooses to employ another for that purpose, he must employ a licensed pilot, and an unlicensed pilot, taking that duty on himself, by command of the master, when a licensed pilot offers his services, would be liable to the penalty in the 70th section.

But the master is not precluded from employing any moving power he may please; he may make use of another vessel or boat, or steam-tug, for that purpose; and if that cannot be done without necessarily devolving upon those who may apply the power, the selection of the course and a certain position, or indeed, all the charge and conduct of the vessel in that course; still, if the *bona fide* object of the employment be the moving power, the person so employed is not a pilot, and has

Francisco v. The People.

not the conduct and charge of the vessel, as such, within the meaning of the act. If, indeed, the real object, in any case, should appear to be to obtain the assistance of the skill of a pilot, and to give him the charge and conduct of the vessel under some colorable duty then assigned to him, the case would be within the act; but in the present instance, it is expressly found that the steam-tug was *bona fide* hired for the purpose of conducting the vessel into the river, and the court, in that case, hold that no penalty was incurred.

It was assumed on the trial of the defendant, that he was engaged in the business of towage. If not, the fifth and sixth requests of the defendant to the judge raised the question, and brought the case within that in the English Exchequer. The fifth request was, that if the jury believed that the act done by the defendant on this occasion was of towage only, the defendant must be acquitted, for that offence was not contemplated by the act, and the judge charged, with this qualification, that if the defendant directed and controlled the movements of the steamer, and was the controlling spirit, then his act is one of pilotage. To this the defendant excepted, and in holding that the defendant, while controlling the movements of the tug, and its master spirit, was committing an act of pilotage, we think the learned Recorder erred. So, also, we think he erred in refusing to charge that the steam-tug Minturn, being a steamboat propelled by steam, had a right to tow vessels through Hellgate, without being subject to the laws relating to pilotage, and that, by the tenth section of the act of 1847, steamboats were excepted from its operation. We think that, upon the facts proved, the defendant has not been guilty of any offence under the act of 1847, and that there was error in refusing to charge in the particulars mentioned, as requested, and that consequently the conviction must be reversed.

Judgment reversed, and a new trial ordered.