## THE PEOPLE *vs.* HENRY SPERRY.

The *C. Vanderbilt*, a tug boat employed in towing vessels through Hell
Gate, being about to commence the towing of the schooner *Copia* through
the channel, H., a Hell Gate pilot, went on board the "Copia," and offered
his services as such pilot to the defendant, who was in charge as pilot
of the *C. Vanderbilt*. His services were refused; but he remained on
board, without rendering, or being requested to render, any aid; and the
defendant towed the schooner through. *Held*, that this was a clear violation
of the statute, (*Laws of* 1865,.*chap*. 115, § 3,) which provides that "If any
person other than a branch Hell Gate pilot, shall pilot or tow for any other
person, any vessel  *  *  *  or board such vessel for that purpose, (except
barges, &c. in the channel of the East river, commonly called Hell Gate,
*  *  *) *without the aid* of a branch Hell Gate pilot on board, he shall be
deemed guilty of a misdemeanor," &c.

That statute is not in conflict with the provision of the constitution of the
United States which grants to Congress the power to regulate commerce.
1. The state act is not an exercise of the power vested exclusively in Con-
gress, but is a mere police regulation.  2. The act has been sanctioned and
adopted by the Congress of the United States.

The protection of an enrollment and coasting license does not extend beyond
the vessel licensed, so as to authorize the towing of other vessels.

CERTIORARI to the court of sessions of Queens county.
The defendant Sperry, in July, 1866, was a steamboat
pilot, licensed by the United States steamboat inspectors as
such.   He was employed as such by the owners of the steam
tug *C. Vanderbilt*, during the month of July, 1866, and
while so employed, in the month of July, 1866, the steamer
*C. Vanderbilt* towed the schooner *Copia* through the channel
of the East river commonly called "Hell Gate.". The de-
fendant, on the 30th day of November, 1866, was indicted
by the grand jury of the county of Queens, in the court of
sessions of said county, for a violation of chapter 115, of the
session laws of 1865, because said steam tug *C. Vanderbilt*,
of which the defendant was pilot, had towed the schooner
*Copia* through the channel of the East river called "Hell
Gate."   The defendant pleaded not guilty.   The issue thus
joined came on to be tried by and before the court of sessions
for Queen's county, on the following day, to wit, December

1, 1866. It appeared by the evidence, that the steam tug *C. Vanderbilt*, on or about July 20, 1866, towed the schooner *Copia* from opposite the Wall street ferry, through the channel of the East river called "Hell Gate." A part of the time the defendant Sperry was at the wheel, and a part of the time Mr. Duval. *Joseph Duval* was on board of the tug boat *as captain*, and *directed the towing of the Copia* by Sperry, the defendant. *Thomas A. Harris*, a *Hell Gate pilot*, was on board of the schooner *Copia* during the towage complained of, but testified he was not *in charge* of the *Copia* or *Vanderbilt*. The enrollment of the *C. Vanderbilt* was read in evidence ; also her coasting license. The steamboat inspectors' certificate of the *C. Vanderbilt* was also read in evidence ; and the *license* of the defendant Sperry, as a pilot, by the United States steamboat inspectors for the district of New York.

After the evidence was closed, the prosecution on being requested to elect as to whether they would claim the conviction of the defendant, for the offense of piloting or for the offense of towing, elected to proceed and claim a conviction against the prisoner for the offense of towing only.

The counsel for the prisoner thereupon requested the court to instruct and direct the jury to acquit the prisoner on the following grounds and upon each of them, to wit :

*First.* Because the acts of the legislature of the state of New York, upon which this indictment is framed, and under which it is found, are in contravention of article 1, section 8, subdivision 3, of the Constitution of the United States, and of various acts of congress passed thereunder.

*Second.* Because the prisoner at the time of the commission of the alleged offense was acting as the pilot of the steam tug *C. Vanderbilt*, having a license so to do from the United States steamboat inspectors, and was also acting under the direction of the captain of the tug, who was on board and gave directions to the prisoner to do the acts complained of, such steam tug being at the time enrolled,

registered and licensed to carry on the coasting trade, in pursuance of the acts of congress of the United States, and thereby authorized to do the act of towing complained of.

*Third.* Because the act of towing complained of is and was in law the act of the captain or owners of the steam tug *C. Vanderbilt,* and not the act of the prisoner Sperry, who was employed by the month as such pilot, and it was his duty to obey the orders of his captain, and as he had a license as a steamboat pilot and was directed by competent authority to do, whatever he did do, he is guilty of no legal offense.

*Fourth.* Because the evidence shows that there was a Hell Gate pilot on board at the time of the towing claimed to be criminal, and therefore the prisoner has committed no legal offense.

The court refused to make such decision or give such directions, to which refusal and decision the prisoner by his counsel, excepted. The court thereupon charged the jury, that for the purpose of this trial, the court would and did hold that the acts of the legislature under which the indictment was found, were valid and constitutional and not in conflict with the Constitution of the United States or of the acts of congress passed under it, and that if they were satisfied beyond a reasonable doubt, from the testimony that the defendant did tow for any other person the *Copia* in the channel of the East river, called Hell Gate, without the aid of a branch Hell Gate pilot on board, it would be their duty to render a verdict of guilty. To which charge the defendant excepted. The court further charged the jury, that upon the question whether the defendant was so towing the *Copia,* there was a conflict of testimony. Mr. Harris and his son testified that the defendant Sperry towed the *Copia* through Hell Gate, and Mr. Duval on the other hand saying that he directed the towing of the *Copia.* It was the duty of the prosecution to satisfy the jury beyond a reasonable doubt, that the offense charged in the indictment had been

committed by the defendant, and if this had not been done they must acquit the defendant. The prisoner's counsel thereupon requested the court to charge the jury that if the prisoner was licensed by the United States steamboat inspectors, and was at the time employed by the owners or master of the steam tug *C. Vanderbilt*, as the pilot of that steamer, and if directed by the captain of the *Vanderbilt*, to tow the *Copia* through the channel of the East river called Hell Gate, the prisoner had a right to do so and therein committed no criminal offense. The court declined to charge as above requested, to which refusal to charge as requested, the prisoner excepted.

The prisoner's counsel further requested the court to charge the jury that the steam tug *C. Vanderbilt*, being enrolled and having a coasting license, and the license of the United States steamboat inspectors, had a right under such coasting license, to tow the *Copia* through Hell Gate whether there was a Hell Gate pilot on board or not. And the master of the *Vanderbilt* had a right to order the pilot in charge to do so, and in complying with that direction the prisoner committed no offense. The court declined to charge as above requested, but charged to the contrary thereof, to which declaration and refusal to charge, and to which charge as given, the prisoner by his counsel excepted.

Before the jury retired, one of their number asked the instruction and decision of the court, upon the legal effect of the fact or circumstance of the witness Harris being on board at the time of the alleged towing. The court thereupon instructed the jury in answer to such question, that although there be a Hell Gate pilot on board, yet he must be there acting in aid or assistance of the person towing the vessel and in charge thereof; to which said instruction and direction of the court, the prisoner by his counsel excepted. The jury afterwards found the prisoner guilty. The court for the purpose of review, declined to pronounce sentence, and the presiding judge granted a certificate of probable cause.

*B. W. Downing* (district attorney) and *John H. Anthon,* for the people. The questions raised on the trial, and now, are,

1. That the presence on board the *Copia* of the witness Harris rendered the towing legal.

2. That the towing was, in law, the act of the owners of the tug, and not of the defendant, their servant.

3. That the license of Silas Sperry, and the papers of the *C. Vanderbilt,* authorized the defendant to do the act charged.

4. That the statute under which the conviction was had, is void, as contravening article 1, section 8, subdivision 3 of the constitution of the United States.

I. Effect must be given to the words of the statute, "*without the aid* of a branch Hell Gate pilot on board." His mere presence, not aiding, is not sufficient.

II. There is no agency in crime. The order of his employers may render them guilty, but cannot excuse the defendant. This is the rule where the immediate actor is sane and aware of the nature of his act.

III. The license of *Silas* Sperry confers no authority on the defendant *Henry* Sperry.

IV. The license and papers give no authority to do any act contrary to law.

V. If the license and papers of the C. Vanderbilt give that vessel rights of navigation, they cannot be held to authorize the defendant *personally* to commit a crime by towing *another vessel not so licensed* or *enrolled.*

VI. The statute of New York is not in contravention of the constitution of the United States; the clause claimed to affect it, is that conferring upon congress the power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." 1. This power does not operate as a prohibition upon the states to pass any act upon the subject, and this is the opinion of a majority of the Supreme Court of the United States. (*Gibbons* v. *Ogden,* 9 *Wheat.* 1. *Cooley* v. *Port Wardens,* 12 *How.* 299.

The People *v.* Sperry.

*The License Cases,* 5 *id.* 504. *The Passenger Cases,* 7 *id.* 302.) 2. But if this power be exclusive and prohibitory, the term " to regulate commerce" must be defined, and its definition is an open question ; for, (*a.*) It will otherwise include quarantine and health laws, river and harbor police laws, laws of commercial and maritime securities and contracts. (*b.*) The cases in the Supreme Court cited, all except from it such cases as those referred to.

VII. The law in question is not a regulation of commerce, but a police law, relating to persons only, and providing only for safety of life and property, in the same way as railroad laws and regulations for the storage of dangerous merchandise, making no discrimination in favor of classes, and applicable only to a single dangerous point of travel, similar to a draw-bridge or crossing on a railway. (*City of New York* v. *Milne,* 11 *Pet.* 102.)

VIII. State pilot laws, existing August 7th, 1789, " and such laws as the states might respectively thereafter enact for the purpose, until further legislative provision should be made by congress," were validated by the act of congress then passed. (1 *Stat. at Large,* 53.) And this act is implicitly confirmed by the law of March 2, 1837, providing that where two or more state pilotage laws cover the same waters, vessels may take the pilots of either. (5 *id.* 153.)

IX. No legislation of congress contravenes the statute. The registry laws of September 1, 1789, (1 *Stat. at Large,* 55,) of December 31, 1792, (*Id.* 287,) of February 18, 1793, (*Id.* 305,) simply fix, by registry and enrollment, the character of American vessels, relieving them from foreign duties, and entitling them to navigate, *subject to all other valid laws.* The acts of March 12, 1812, March 3, 1825, and July 17, 1838, extend the same provisions to steamboats. The act of August 30, 1852, (10 *id.* 61,) compels certain steamboats to be licensed and carry a pilot licensed by the laws of the United States; and the act of June 8, 1864, extends this requirement to tug boats. Nothing in these

laws authorizes the towing of *other vessels not so licensed or enrolled* by such pilots, or by means of such vessels. These statutes only. impose *additional* duties. (*Fitch* v. *Livingston*, 4 *Sandf.* 492.)

X. The law in question is constitutional, and the conviction should be affirmed and sentence pronounced. (*Fitch* v. *Livingston*, 4 *Sandf.* 492. *The People* v. *Jenkins*, 1 *Hill*, 469. *Harrington* v. *Rochester*, 10 *Wend.* 547. *Cooley* v. *Wardens*, 12 *How.* 299. *City of New York* v. *Milne*, 11 *Peters*, 132.)

*Elias J. Beach*, for the defendant. I. Even if it were conceded (which it is not) that the defendant did tow the schooner *Copia* through the channel of the East river, called "Hell Gate," without having the aid of a Hell Gate pilot on board, still, as the defendant was licensed, as a steamboat pilot, by the United States inspectors, and as the *C. Vanderbilt* was duly *enrolled, registered,* and *licensed* to carry on the coasting trade as a tug or tow boat, propelled by steam, by the proper authorities of the United States, a state law could not *legally* prohibit or interfere with the business of the tow boat. 1. By subdivision 3 of article 1, section 8 of the constitution of the United States, the power to regulate commerce is vested in the congress of the United States, in the following words: "To regulate commerce with foreign nations, and *among* the several states, and with the Indian tribes." 2. It has been repeatedly held that the power to regulate commerce *includes the power* to regulate navigation, and that pilot laws are regulations of navigation. (*Gibbons* v. *Ogden*, 9 *Wheat.* 1 to 240. *Hebert* v. *Durgan*, 13 *Peters*, 108, 117. *Cisco* v. *Roberts*, 6 *Bosw.* 494. *Dobbins* v. *Commissioners of Erie.* 16 *Peters*, 435. *Norris* v. *The City of Boston*, 7 *How. U. S.* 283.) 3. The prosecution have invoked no foundation for the state act of 1865, under which they seek to bring *towing*, except the regulation of *pilotage.* All the well considered cases in our state and

national courts hold the doctrine that *congress* has the *paramount* power to regulate commerce, *including pilotage,* and of *superseding,* by its own enactments, all state laws on the subject. The cases of *Cooley* v. *Port Wardens of Philadelphia,* (12 *How. U. S.* 299,) and the case in 2 *Wallace,* 450, relied upon by the prosecution, affirm the above proposition. 4. Has congress legislated upon the subject matter covered by this indictment and conviction? *If so, this conviction is void.* On the 30th of August, 1852, the congress of the United States passed an act, entitled "An act to amend an act entitled an act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam, and *for other purposes.*" (*U. S. Stat. at Large, vol.* 10, *p.* 61.) By section 9 of that act, it is provided that, "instead of the existing provisions of laws for the inspection and equipment of steamers, and the present system of pilotage of such vessels," a board of inspectors shall be appointed, who alone can license engineers and pilots for such vessels. Subdivision 7, of the same section, provides "The inspectors shall license and classify all engineers and pilots of steamers carrying passengers." Subdivision 10: *It shall be unlawful "for any person to employ, or any person to serve, as engineer or pilot on any such vessel, who is not licensed by the inspectors,"* &c. By the foregoing act, vessels engaged as ferry boats and tug or towing boats were not, *in terms,* included, and much doubt existed whether said act, as to licensing of engineers and pilots, applied to any engineers or pilots except such as were engaged upon steamers carrying passengers, although the inspectors compelled *all* persons engaged as engineers or pilots on any vessels propelled by steam, to take out license from them. Congress, at its 38th session, by an act approved June 8, 1864, further enacted, as follows: Section 4. And be it further enacted, that the 42d section of the act of August 30, 1852, be so construed as to require the inspec-

tion of the hull and boiler, in the manner prescribed by that act, of every vessel propelled, in whole or in part, by steam, and engaged as a ferry boat, tug, or towing boat, or canal boat. Section 5. And be it further enacted, that all engineers and pilots of ferry boats, tug boats, towing boats, or canal boats, subject to inspection by this act, shall be classified and licensed in the same manner as are pilots and engineers, by said act of August 30, 1862. The above quoted 4th section brought ferry and tug boats within the inspection laws of the United States; and, by the 5th section, the defendant and others similarly situated, were *compelled* to be classified and licensed, according to the act of 1852.

The 39th congress, in 1866, passed the following act, entitled "An act relating to pilots and pilot regulations :" "Be it enacted, &c. that no regulations or provisions shall be adopted, by any state of the United States of America, which shall make any discrimination in the rate of pilotage or half pilotage between vessels sailing between the ports of different states, *or any discrimination against vessels propelled, in whole or in part, by steam,* or against national vessels of the United States ; and all existing regulations or provisions making any such discrimination, as herein mentioned, are hereby annulled and abrogated." (*Approved July* 13, 1866.)

The next legislation of congress was "An act further to provide for the safety of the lives of passengers on board of vessels propelled, wholly or in part, by steam, to regulate the salaries of inspectors, *and for other purposes.*"

Section 1 of said act provides as follows : That if any engineer or pilot, licensed in pursuance of law by any inspector or board of inspectors, shall, to the hindrance of commerce, wrongfully or unreasonably refuse to serve as such on any steam vessel, *as authorized by the terms of his license,* or *shall fail to deliver to the applicant for such services, at the time of such refusal,* if the same shall be demanded, a statement in writing, signed by such engineer or pilot, of the reasons therefor ; or if any pilot shall refuse to admit into

the pilot house with him any person or persons whom the captain or owners of any steamboat may desire to place there for the purpose of acquiring the knowledge of piloting, *he shall forfeit and pay to the party aggrieved thereby the sum of three hundred dollars, to be recovered in an action of debt founded on this statute.*

The defendant at the time of the alleged towing held a license from the United States *inspectors,* and was *compelled* by the above section, *under a penalty* of $300, to *serve* on the tug boat if required to do so, and if he served *without* having such license, then by section 10 of the above quoted act of 1852, he is *made liable to a fine* of $100, so that, so far as the United States laws are concerned, he must leave his business *entirely or take a license, and if he takes a license* he must serve through Hell Gate or elsewhere, or pay a fine of $300 ; and if he does serve, having a license from the United States inspectors, and is engaged on a tow boat, if his employers direct him to tow through Hell Gate, and do not put on board a Hell Gate pilot (by way of ornament) the poor pilot *is indicted under state laws, as in this case,* for doing what the act of congress *compels* him to do or pay a fine of $300. He cannot be *legally* so placed.

It will be perceived on an examination of section 10, of the act of 1852, that the pilot of the tow boat is not the only one who is rendered liable, provided the state law is of force. By that section, if the *owner* or *captain* of the tug boat employs any one to serve as pilot, who is not licensed by the United States inspectors, he forfeits $100, so that, if an owner of a tug boat tows vessels without a United States pilot he is liable to a fine, *and if he takes a Hell Gate pilot he is liable to a fine of* $100, *under United States laws, and if he does not take him he is liable to indictment, fine and imprisonment under state laws.* It is submitted that a mere statement of the proposition is sufficient to show that the state law upon which this indictment is framed is in

direct conflict with the constitution of the United States, and the above acts of congress thereunder, and wholly void.

Section 9 of the above quoted act of July, 1866, removes every doubt, if a doubt remains possible, as to whether tow boats and the vessels towed, come within the navigation laws of the United States, and is as follows :   " And be it further enacted, That all vessels navigating the bays, inlets, rivers, harbors, and other waters of the United States, except vessels subject to the jurisdiction of a foreign power, and engaged in foreign trade, and not owned in whole or in part by a citizen of the United States, shall be subject to the navigation laws of the United States."

 II. The conflict between the above acts of congress which are *clearly within* the *express letter* of the *constitution* of the United States, and the acts of our state legislature upon which this indictment and conviction are founded, is sharp and direct, in the following among other particulars :  1. The above act of congress, of July 13, 1866, provides that no state shall make any discrimination against *vessels propelled wholly, or in part, by steam.* The state act provides that *one of the crew* of a vessel may pilot his own vessel through Hell Gate, *except when in tow of a steamer.* 2. The state law provides that all persons employing another to act as pilot through Hell Gate, who is not a Hell Gate pilot, shall forfeit and pay to the port wardens of the port of New York, the sum of $100.

Section 10 of the act of congress of 1852, since made applicable to tow boats, and the pilots of the same, provides that if the owner of a steam tow boat employs any other pilot except one licensed under acts of congress, he shall pay a fine of $100.   Under the state laws the owners of the *C. Vanderbilt* are liable to a fine of $100 for having employed Sperry, though licensed under and in pursuance of the laws of the United States ; and under the laws of the United States, they would have been liable to the same fine if they had employed Harris, the Hell Gate pilot.  3. The defendant Sperry,

having a license from the United States inspectors, and being in the employ of the tow boat owners, was compelled to steer the tow boat as directed, or be liable to a fine of $300. Having done no more than the law of the United States and his oath required him to do, the defendant finds himself indicted for and convicted of a misdemanor under the state law, and asks to be relieved from such conviction. If Sperry had piloted the tow boat without having a United States license, he would have been liable to a fine of $100, under section 10 of the act of Congress of 1852.

III. The indictment of the defendant in this case is stated to be for a breach of the *pilot laws of the state.* The pilot of a tow boat, who being upon his own boat, tows a vessel through Hell Gate, and by signs made to the helmsman of the vessel he tows, directs changes at the helm to conform to the movements of the steamer, *does not pilot such vessel* within the prohibition of our statute. (*The People* v. *Francisco,* 10 *Abb.* 30.) 1. The above decision disposes of all questions as to any breach of the *pilot laws,* without reference to the constitution, acts of congress, or decisions of the United States Supreme Court, and as the subject of *pilotage* is the *only one* in connection with commerce or navigation which congress has in any way remitted to the states, the question of *towage* is the only one for consideration, and that is wholly outside and disconnected from the act of congress of 1789 ; and the various adjudications giving an exposition of that act.

IV. The owners of the tow boat *C. Vanderbilt,* had a right to tow the schooner *Copia* through Hell Gate, by virtue of their enrollment, coasting license, and steamboat inspection certificate, and in doing so were compelled to employ a pilot licensed by the United States inspectors, and were *forbidden* to employ any other, and their employment of the defendant Sperry, and his fulfillment of such employment, was not illegal, and the court below erred in not directing the jury to acquit the defendant.

The following cases abundantly vindicate the correctness of the principle here asserted : Down to the time of the decision of the Supreme Court of the United States in the great case of *Gibbons* v. *Ogden,* (9 *Wheat.* 1,) there might have been some doubt on the question as to the power of the state to impose conditions or prohibit towing ; but it must now be conceded that if the state, notwithstanding the constiutution of the United States and the acts of congress, can compel a tow boat, having a pilot on board licensed by the United States inspectors, to take on board any other pilot, expressly prohibited by act of congress, but licensed by state authority, then they may compel the taking of one hundred or one thousand pilots under state authority, which would amount to a total prohibition of the prosecution of trade under the coasting license of the United States. In the above case the court held that a coasting license, like the one held by the steam tug of which the defendant was pilot, issued to the steamboats of Gibbons, authorized him to run his vessels to Albany, or to any port or navigable waters of the United States. And that several acts of the legislature of the state of New York, granting to Fulton and Livingston the exclusive right of steamboat navigation from the city of New York, were void even though the waters of the Hudson river were within the general jurisdiction of the state of New York, and in that case the court says : " It has been concluded that as the word regulate implies in its nature full power over the thing to be regulated, it excludes necessarily the action of all others that would perform the *same operation on the same thing.*" (*See also Prigg* v. *The Commonwealth of Pennsylvania,* 16 *Peters,* 617 ; *Sinnot* v. *Davenport,* 22 *How. U. S.* 227 ; *Brown* v. *State of Maryland,* 12 *Wheat.* 419 ; *Almy* v. *State of California,* 24 *How.* 169 ; *Foster* v. *Commissioners of Pilots,* 22 *id,* 244.)

V. The court below erred in refusing to charge the jury, when so requested, that if the prisoner held a license from the United States inspectors, and was at the time employed

by the owners or master of the tug *C. Vanderbilt* as the pilot of that steamer, and if directed by the captain of the *Vanderbilt* to tow the *Copia* through the channel of the East river, called Hell Gate, the prisoner had a right to do so, and therein committed no criminal offense.    1. The refusal to charge the above proposition was clearly erroneous, and the error was not at all cured by the previous charge as given, because the jury could not have failed to understand that, in the opinion of the court given upon this refusal, even if every word stated by the witness Duval was true, and every word · stated by Harris to the contrary was false, still they could not acquit the prisoner.    2. The refusal to charge as above, was almost tantamount to saying to the jury that they must convict the prisoner, even if the evidence given on his behalf was all true.

VI. The court below also erred in refusing to charge the jury that the steam tug *C. Vanderbilt* being enrolled, and having a coasting license, and the license of the United States steamboat inspectors, had a right thereunder to tow the *Copia* through Hell Gate, whether there was a Hell Gate pilot on board or not ; and the master of the *Vanderbilt* had a right to order the pilot in charge (defendant Sperry) to do so, and in complying with that direction the prisoner committed no offense.    1. The court not only erred in refusing to charge as above requested, *but also in charging* to the contrary thereof. 2. The comments made under the fifth point, are equally applicable to this.    3. The legislature could, with equal propriety, enact that no man or body of men should row a boat or vessel through Hell Gate, *or sail a vessel through it*, without paying tribute to this monopoly of Hell Gate pilots, and thus every shipmaster would be compelled to pay tribute, or be perpetually quarantined or indicted.

VII. If by any possibility this court should hold that the enrollment and coasting license of the *Vanderbilt*, and the employment of a licensed pilot guaranteed neither to it or him any right, except in *subordination* to the corrupt legis-

The People *v.* Sperry.

lation of the state of New York, still this conviction should be reversed for *two reasons :* 1. Because the act of towing complained of was, and is, *in law,* the act of the captain or owners of the tug *Vanderbilt,* and not the act of the prisoner Sperry. He merely steered the boat while the engineer and fireman furnished the propelling power. 2. Because the evi-dence shows that there was a Hell Gate pilot (Thomas A. Harris) taken on board, who remained on board during the whole towage, and if he did not .*aid,* it was no fault of the prisoner, as he did not interfere with him directly or indirectly.

*By the Court,* GILBERT, J. The defendant was convicted in the court of sessions of Queens county of a misdemeanor in towing a vessel in violation of section 3 of chapter 115 of the Laws of 1865. This statute provides, that "if any person, other than a branch Hell Gate pilot, shall pilot or tow for any other person any vessel of any description, or board such vessel for that purpose (excepting a minor class) &c., &c. *without the aid* of a branch Hell Gate pilot on board, he shall be deemed guilty of a misdemeanor," &c.

A certificate of probable cause having been given, the case has been brought here by the people upon a certiorari. It was proved on the trial, that a tug boat employed in tow-ing vessels, called the *C. Vanderbilt,* was about to commence towing of the schooner *Copia,* when one Harris, a Hell Gate pilot, went on board the *Copia* and offered his services as such pilot, to the defendant, who was in charge as "pilot" of the *C. Vanderbilt.* His services were refused ; nevertheless Harris remained on board, without rendering any aid. Nor was he applied to by the defendant to render any aid. On the contrary, the defendant, when reminded of his duty, under statute of 1865, said "he didn't care—he was going to tow her (the *Copia*) through." He did tow her through, and we are of opinion, that this was a clear violation of the statute.

It is contended, however, by the defendant's counsel, that

The People *v.* Sperry.

the statute is in conflict with that provision of the constitution of the United States, which grants to congress the power to regulate commerce.

The answer to this is twofold.

1. The state act is not an exercise of the power vested exclusively in congress, but is a mere police regulation. The distinction is well defined, and has been settled by repeated adjudications of the Supreme Court of the United States. (*The Licence Cases, 5 How.* 504. *The Passenger Cases,* 7 *id.* 302. *City of New York* v. *Milne,* 11 *Peters,* 102.) There are many state regulations which relate to and more or less affect commerce, but which are not regulations of commerce within the meaning of the grant of power to congress. The cases cited show instances. It would be easy to suggest many more. The case before us presents one. The object of it is, the protection and preservation of property and life. This is a subject of great interest to the state, and we think falls appropriately within the scope of that legislatation which, under our system of government, the state ought to exercise, in preference to congress.

2. The law in question has been sanctioned and adopted by the congress of the United States, unless such sanction and adoption has been withdrawn by some act of congress, passed since the act of August 30, 1852. This point was expressly decided in *Steamship Co.* v. *Joliffe,* (2 *Wallace,* 450.) The court in this case hold that the clause of the constitution of the United States, containing the grant to congress " does not in terms exclude the exercise of any authority by the states to regulate pilots." On the contrary, they say " the authority of the states to regulate the whole subject, in the absence of legislation on the part of congress, has been recognized from the earliest period of the government. On the formation of the union, there were laws in force, in the different states bordering on the sea, for the regulation of pilots and pilotage, and at its first session, in

1789, congress passed an act, adopting the existing regulations, *and such as might be provided by subsequent legislation of the states.*" This case involved the validity of an act of the state of California, which made it a misdemeanor for any person not having a license from the Board of Pilot Commissioners, created by the act, to pilot any vessel in or out of the port by the way (called the Heads) which leads to and from the ocean. It was contended, on the argument, that the act of congress of August 30, 1852, was in conflict with the provisions of this state act. The court, in deciding this point, referred to and commented upon the legislation of congress from the act of 1789 to the act of 1852 inclusive, and say : " We do not perceive in its provisions any intention to supersede the state legislation recognized by the act of 1789, or any inconsistency with the port regulations established by the act of California of 1861." The provisions of the acts of June 8, 1864, and July 13, 1866, are merely supplementary to the act of August 30, 1852. Neither of them purport to establish regulations for port pilotage, any more than similar provisions in the act of August 30, 1852. They are, therefore, within the rule established by the case of *Joliffe, supra.*

In the face of this decision, it can hardly be expected of us that we should hold that the state authorities are violating the constitution of the United States, by exercising powers, expressly conferred upon them by the statute in question, and which have been so distinctly accorded to the state by the supreme federal tribunal.

It is also contended that the enrollment and coasting license of the *C. Vanderbil* protected the defendant. Our opinion is, that such protection does not extend beyond the vessel licensed, and does not authorize the towing of other vessels. The charge to the jury appears to be correct. The having been employed by another to commit a misdemeanor is no excuse.

The conviction must be affirmed, and the record remitted to the court below, with directions to proceed and render judgment.

[ORANGE GENERAL TERM, September 9, 1867. *Lott, J. F. Barnard* and *Gilbert*, Justices.]