## THE ROBERT H. BURNETT.[1]

### PENNSYLVANIA R. CO. *v.* THE ROBERT H. BURNETT.

*(District Court, D. New Jersey.* February 15, 1887.)

TOWING AND TOWAGE—TUG AND TOW—NEGLIGENCE—SUNKEN ROCK.

A tug is required to have a knowledge of the condition of the bottom and of the depth of water in the river that she is navigating. The master of a tug employed in the Harlem river should certainly be aware of the existence and location of a well-known reef; and if his tow, in consequence of this ignorance, is injured, the tug will be liable.

In Admiralty. Libel *in rem* for negligent towage.
*Biddle & Ward,* for libelant.
*Wm. T. Francisco,* for respondent.

WALES, J. The tug Robert H. Burnett was employed to tow the libelant's barge, laden with 262 tons of coal, from Jersey City to Harlem station. The barge was securely lashed to the port side of the tug, and was the only tow. The weather was fair, the time a little after noon, and the tide about a quarter flood, when, at a point about abreast of or little above One Hundred and Twenty-fifth street, in Harlem river, the barge struck on a rock, at the distance of from 100 to 110 feet from the western shore, and was so badly injured that she had to be beached to prevent her sinking. At low tide the depth of water at the place of the accident was six feet, and at the time the barge struck could not have been over seven. The barge drew seven feet aft, and towed down a little lower. It was generally known, by pilots and water-men who navigated the river, that between One Hundred and Twenty-first and One Hundred and Twenty-sixth streets a rocky reef underlies its surface, irregular in shape and direction, running in and out at a distance of from 75 to 100 feet from the western shore, and that prudent and cautious masters were accustomed to give it a wide berth. A buoy was placed at One Hundred and Twenty-first street to mark the beginning of the reef. At One Hundred and Twenty-fifth street the river is 600 feet across, and has a channel-way of 400 feet in width, with 25 to 30 feet of water. After the accident, the captain of the barge took soundings with a pole at the spot where the barge struck, and had no difficulty in finding the rock in the location described.

The captain of the tug testifies that he had been running on the river for a year or more, but that he had no knowledge of the position of this rock, and had never heard of the reef. This admission of ignorance of notorious facts, about which there can be no question, leaves him without any excuse for going so near to the western shore as he did. The pretense that he sheered in to avoid a tug with two large car-floats in tow, which was coming down the river, but which no other witness saw, does

---

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

not justify the course he took, as he had sufficient room to pass on the eastern side. One of the respondent's witnesses, William Cox, speaks of the rocky condition of the bottom of the river in the vicinity of the accident, and of the danger of going in shore until the tide is up.

When the evidence points so clearly to the ignorance and carelessness of those in charge of the tug as the direct causes of the accident, the law is equally clear that the tug must be held responsible for the consequences; for, although the tug was not a common carrier, and liable as an insurer, or required to use the highest degree of care and skill, yet she was bound to use reasonable skill and care, and to know the condition of the bottom and the depth of water of the river which she was navigating. *The Margaret*, 94 U. S. 497; *The Effie J. Simmons*, 6 Fed. Rep. 639; *The Henry Chapel*, 10 Fed. Rep. 777; *The Narragansett*, 20 Fed. Rep. 394; *The Ellen McGovern*, 27 Fed. Rep. 868.

The tug was on a common and well-known route, and the identical place where the barge struck had been the scene of previous similar accidents. There is no question here of evenly-balanced testimony. The weight of the evidence is largely against the tug; and, as there is a failure of proof that she exercised the proper knowledge, care, and skill which should have been exercised, in navigating such a frequented water-way as the Harlem river, there must be an interlocutory decree for the libelant.