## STATE *v.* TURNER.

[55 Pac. 92.]

Pilots and Pilotage.*—A master of a tugboat which is towing a vessel lashed alongside, who directs the movements of the tow by orders to its crew from the tug, is not a pilot, and is not engaged in an act of pilotage under section 1908, Hill's Ann. Laws.

Pilot Defined.—A pilot is a person who boards a vessel at a particular place for the purpose of guiding her through a channel, or from or into a port.

---

*Note.—The authorities on the liability of a vessel or its owner for compulsory pilotage fees are found in a note to *Clayton* v. *Hebb*, 39 L. R. A. 177. See, also, a note on pilots and their charges, 27 Am. St. Rep. 557.—Reporter.

From Clatsop : THOS. A. McBRIDE, Judge.

Joseph Turner appeals from a judgment fining him $25 for acting as a pilot for a sailing vessel on the Columbia River without a pilot's license.

REVERSED.

For appellant there was a brief over the names of *Williams, Wood & Linthicum,* and *C. R. Thomson,* with an oral argument by *Mr. Stewart Brian Linthicum.*

For the state there was a brief over the names of *Cicero M. Idleman,* Attorney-General, *T. J. Cleeton,* District-Attorney, *James Gleason,* and *Fulton Bros.*, with an oral argument by *Messrs. Idleman* and *Gleason.*

MR. JUSTICE MOORE delivered the opinion.

The defendant was convicted of piloting on the Columbia River without a license ; and, having been sentenced to pay a fine of $25, he appeals, assigning certain alleged errors, only one of which requires consideration in determining the issues presented.

The undisputed facts are that defendant has not been licensed as a pilot by the Board of Pilot Commissioners of the State of Oregon, nor was he the master or owner of the vessel which he was accused of piloting. He was, however, master of the steam tug Oklahoma, and on May 7, 1897, ran her alongside of, and made fast to, the Japanese bark Tenkio Maru, which he towed in the Columbia and Willamette rivers from Astoria to Portland, arriving at the destination the next day. The defendant, being unable to steer the tow by the rudder of the tug alone, gave orders from the pilot house of the steamer to the Japanese sailors, who steered the bark under his directions. He offered to show that he was

duly licensed as master and pilot of steam vessels, and authorized by the Federal Inspector of Steamboats to navigate the waters of the Columbia and Willamette rivers and their tributaries; but the court, holding that such license afforded no defense to the action, refused to permit it to be received in evidence, to which ruling defendant excepted.

It is contended by defendant's counsel that the bark having been made fast to the side of the tugboat rendered them a single vessel under steam; that their client having been duly licensed, under the laws of the United States, as a master and pilot of steam vessels, had the right, while on board of the tugboat, to direct its course, and in doing so was authorized, when necessary, to demand and receive the assistance of those who operated the rudder of the tow, to enable him to keep the tugboat in the channel, in view of which no offense was committed by him in towing the vessel over the pilot grounds, and hence the court erred in refusing to discharge him when the state rested. In considering the question presented, it will be assumed that defendant had been duly licensed as a master and pilot of steam vessels, under the laws of the United States; and, if such license constituted a defense to the action, it necessarily follows that the court erred in refusing to permit it to be received in evidence.

A tugboat is not a public carrier, and hence is not an insurer of the vessels towed by her, notwithstanding which, to avoid accidents to such vessels resulting from the ignorance or carelessness of the master of the tug, certain rules in aid of navigation have been adopted by the courts, one of which is that when a tugboat is lashed to a tow, the identity of the latter, so long as this union exists, is merged in the former, and under this legal fiction they are treated as a single vessel under steam:

16 Am. & Eng. Enc. Law (1 ed.), 319; *The Johnson*, 76 U. S. (9 Wall.), 146; *The Northern Belle*, 76 U. S. (9 Wall.), 526; *Sturgis* v. *Boyer*, 65 U. S. (24 How.) 110; *The Civilta*, 103 U. S. 699: *The Pennsylvania*, 3 Ben. 215, Fed. Cas. No. 10,946; *The Merrimac*, 2 Sawy. 586, Fed. Cas. No. 9,478; *The Fred W. Chase*, 31 Fed. 91; *The Bordentown*, 40 Fed. 682; *The Columbia*, 19 C. C. A. 436, 73 Fed. 226; *Sproul* v. *Hemmingway*, 14 Pick. 1 (25 Am. Dec. 350). The application of this rule makes the tugboat liable to the vessel to which she is attached for any injury which the latter may sustain in consequence of the want of reasonable skill and care on the part of the master of the tugboat, whose mind controls the movements and directs the course of the united vessels thus committed to his charge. It has been held that this unity of power and weight imposes upon the master of the tugboat the duty of knowing the location and character of all obstructions to navigation that may be discovered by the exercise of reasonable diligence; to be acquainted with the various configurations of the bottom of the channel, the course thereof and the depth of water thereon; and also to understand the velocity of the current, the state of the tide, and the effect of the wind, so far as either may tend to divert the combined vessels from pursuing their proper passage. *The Lady Pike*, 88 U. S. (21 Wall.), 1; *The Margaret*, 94 U. S. 494; *The Effie J. Simmons*, 6. Fed. 639; *The Henry Chapel*, 10 Fed. 777; *The Narragansett*, 20 Fed. 394; *The Ellen McGovern*, 27 Fed. 868; *The Robert H. Burnett*, 30 Fed. 214. When a steam tug is engaged to tow a vessel in charge of a pilot, the captain of the tug is bound to obey the orders of the pilot, whose duty it is to superintend her navigation: *The Energy*, 3 L. R. Adm. & Ecc. 48. When given charge he becomes *pro hac vice* the master of the tow, whether he occupies a position

upon her deck, or upon the boat which furnishes the motive power. *Wilson* v. *Charleston Pilot's Association*, 57 Fed. 227. With these preliminary observations upon the unity of the tug and tow, and of the duty which the master of the tug owes to the tow when acting in the dual character of pilot and master, the statute relating to pilotage will be examined, with a view of ascertaining what acts constitute a violation thereof.

An act of the legislative assembly, approved October 20, 1882 (Laws, 1882, p. 15), incorporated in Hill's Ann. Laws as sections 3892 *et seq.*, defines the pilotage grounds of the Colombia River Bar, and of the Columbia and Willamette rivers and their tributaries ; creates a board of pilot commissioners, and authorizes the members thereof to license pilots therefor ; exempts from pilotage dues vessels engaged in the whaling or fishing trade, and such as are licensed and engaged exclusively in the coasting trade between any port in this state and other Pacific Coast ports ; and prescribes pilotage dues. Section 26 of the act, being section 1908, Hill's Ann. Laws, provides the following penalty for piloting a vessel without a license, to wit : "Any person who pilots any vessel upon or over the bar or river pilot grounds, not being then a licensed pilot therefor, nor the master or owner thereof, or any pilot who shall demand or receive any greater compensation for piloting a vessel over or upon either of said grounds than is allowed by law, is guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment in the county jail not more than six months, or by a fine of not more than $500, or by both such imprisonment and fine." It is contended by counsel for the state that the taking of the bark over the pilot grounds from Astoria to Portland, in the manner stated, was an act of pilotage within the meaning of the statute,

while defendant's counsel insist that the act complained of constitutes the performance of a towage contract only. The case which best illustrates the point for which defendant's counsel contend is *Francisco* v. *People*, 4 Park. Cr. R. 139, in which it appeared that the pilot of a steam tug was indicted, tried, and convicted for violating a statute of New York, which provided that "if any person, other than a Hell Gate pilot, shall pilot for any other person any vessel of any description through the channel of the East River, commonly called Hell Gate, he shall * * * be deemed guilty of a misdemeanor," and on conviction thereof be punished, etc. It was also provided that the act should not be construed as applying to steamboats. It was proved at the trial that two schooners were lashed, one on each side of the steam tug of which Francisco was the pilot, and thus towed through Hell Gate ; he being on the steam tug, piloting it, and making signals to those on board the schooners to change their helms to conform to the movements of the steamer. At the trial the court was requested to charge the jury that, if they believed the act done in the manner stated was one of towage only, the defendant must be acquitted. The judge gave the charge requested, with the qualification that if the accused directed the movements of the steamer, and was the controlling spirit, the act complained of was one of pilotage.

An exception to the charge as given having been taken, the court, in reversing the judgment, say : " Bouvier's Law Dictionary defines a pilot to be—First, an officer serving on board of a ship during the course of a voyage, and having the charge of the helm and of the ship's route ; and, secondly, an officer, authorized by law, who is taken on board at a particular place for the purpose of conducting a ship through a river, road, or channel, or from or into a port. This definition would seem to carry

the idea that the pilot is to be put on board the ship piloted; that he is not, in the legal sense, a pilot unless on board the ship which he is conducting through a river or channel. Could he be said to be a pilot, if he stood on the shore, and directed the course of the vessel by signals, or ran along the bank of the stream, and by words or signs controlled and directed the course of the vessel navigating the stream? We think not, and that the intendment of the act was to apply to pilots on board, piloting or directing the ship or vessel while on board of it. The defendant was conducting the steam tug through the channel of the East River, as he lawfully might do. The two schooners which it is claimed he piloted were lashed to the steamboat, and must necessarily obey its every motion. As a consequence, they were piloted through the channel; and so they would have been, if placed on the deck of the steamer. It is true, the persons on the schooners had to obey, and did obey, signals given to them by the defendant while on board the steamer. He might have given the same if on the land, but we do not see that this circumstance determines that he was piloting the schooners." After that decision was rendered, and probably in consequence of its effect, the legislative assembly of New York amended the statute in question by inserting the words "or tow" after the words "shall pilot." After the statute had been so amended it was held that a person not licensed as a pilot under the laws of that state, but who, in pursuance of a license issued under the laws of the United States, was in charge of a steamboat, and towed a schooner through Hell Gate, violated the provisions of the act: *People* v. *Sperry*, 50 Barb. 170.

The decision in *Francisco* v. *People*, 4 Park Cr. R. 139, seems to rest upon the position occupied by the person in charge of the tugboat while directing her course and

that of the tow, and to decide, in effect, that, if not actually on board the tow, he is not to be considered or treated as her pilot. In considering this view of the law, an examination of the meaning of the word as now understood, becomes important. Bouvier, as authority for the definition quoted in *Francisco* v. *People*, cites Abb. Shipp. The preface to the first edition of that work shows that its author (afterward Lord Tenterden) completed it January 25, 1802, during which year it was published: 3 Campbell's Lives of the Chief Justices of England, 275. The thirteenth edition, which contains the text of the fifth edition as compiled by the author, contains at page 189 the following explanation of the definition given by him: "In England the term 'pilot' is now invariably used to designate a person of the second class mentioned by Lord Tenterden, namely, 'a person taken on board at a particular place for the purpose of conducting a ship through a river, road, or channel, or from or into a port,' and wherever the word is used henceforth in this treatise it is in reference to a person so employed." It will be remembered that in 1802 steam had not yet been applied as a motive power to vessels, at which time pilots probably boarded incoming vessels from a pilot boat, and conducted them into port; and the definition formulated by Lord Tenterden was undoubtedly correct at the time it was announced. While pilot boats still cruise about the entrance to harbors, on the lookout for incoming vessels, that a pilot may be placed thereon to conduct them into port, it is very evident that the person having charge of and remaining on a tugboat which tows a vessel into or out of a port, or through a roadstead, is as much a pilot as if he occupied a station on board the tow: *Wilson* v. *Charleston Pilot's Association,* 57 Fed. 227. The use of steam as a motive power has

materially increased the importance of navigation, and, this being so, the definitions of terms once applicable have become obsolete, or, if they relate to the original subjects, should be expanded to suit the changed condition of the times.

The important question to be considered is, who is a pilot, within the meaning of the word as intended by the legislative assembly by the use thereof in the act of October 20, 1882? Section 26 of said act is penal, but this does not necessitate a strict construction ; for section 2050, Hill's Ann. Laws, in prescribing the method for the interpretation of such statutes, reads : "The rule of the common law that penal statutes are to be strictly construed has no application to this Code, but all its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." In *Steamship Co.* v. *Joliffe*, 69 U. S. (2 Wall.), 450, Mr. Justice FIELD, in construing a statute of California creating a board of pilot commissioners, which was authorized to license pilots, says : "The object of the regulations established by the statute was to create a body of hardy and skillful seamen, thoroughly acquainted with the harbor, to pilot vessels seeking to enter or depart from the port, and thus give security to life and property exposed to the dangers of a difficult navigation." Such must also have been the intention of the legislative assembly of this state, for the bar pilots are required to maintain, and at all times, unless prevented by tempestuous weather, to keep a pilot schooner cruising outside the Columbia River Bar, supplied with provisions and water for the relief of distressed vessels, and to extend aid to all vessels in stress of weather, or in case of disaster : Hill's Ann. Laws, § 3912. To compensate such pilots for the hazard of their lives in the cause of humanity, the act makes pilotage dues compul-

sory to all vessels not exempted therefrom, thereby creating a fund to reward these pilots for the faithful performance of their duties.   But if the master of a tugboat can tow a vessel over the Columbia River Bar, and escape the penalty prescribed by the act, because he directs the course of the tow from the deck of his steamer, then it follows that the objects of the statute are defeated and justice thwarted, the effect of which must inevitably result in the retirement of the bar pilots and the abandonment of their schooner.   The degree of danger to life and property which may be encountered at the bar is not to be apprehended in navigating the Columbia River, but the difference in the risk assumed by the pilots on these several pilot grounds is one of degree only ; and, this being so, the necessity for providing pilots for that stream, and making the dues therefor compulsory, is a legislative, and not a judicial question, in view of which the reason for the retention of the bar pilots is applicable also to the maintenance of the river pilots.

These considerations, in the light of the rule prescribed in the Code for the construction of penal statutes, lead to the conclusion that the legislative assembly intended to limit the term as used in the act in question to mean that a pilot is a person whose mind dictates the course and controls the movements of a vessel in its passage through the waters of a channel, the configuration of the bottom of which, and all obstructions to navigation therein, he is presumed to know.   Defendant's mind undoubtedly directed the course and controlled the movements of the bark which his craft was towing, and, under the definition given, he was a pilot thereof, and liable for a violation of the provisions of the statute, unless his license under the laws of the United States excused his act.   In *Chapman* v. *Jackson*, 9 Rich. Law, 209, it is held that the act of congress of 1852, requiring certain

steam vessels to have on board a pilot for the voyage, did not supersede the laws of the different states relative to pilots for ports and harbors, and that such pilots for the voyage must, on entering a port or harbor, give place to a local pilot. To the same effect, see, also, *Steamship Co.* v. *Joliffe*, 69 U. S. (2 Wall.) 450 ; *The George S. Wright*, Deady, 591, Fed. Cas. No. 5,340 ; *Cisco* v. *Roberts*, 36 N. Y. 292. These decisions proceed upon the theory that a person licensed as a master and pilot under the laws of the United States was authorized to navigate steam vessels on the high seas, but that such license was intended to expire with the coast voyage of the vessel : *Thompson* v. *Spraigue*, 69 Ga. 409 (47 Am. Rep. 760). In the case at bar, however, defendant was licensed, in pursuance of the laws of the United States, as master and pilot of steam vessels on the Columbia and Willamette rivers and their tributaries, and under sections 4401, 4444, Rev. Stat. U. S., when construed in *pari materia*, was probably entitled to pilot "coastwise steam vessels" upon the waters named in his license without interference on the part of the state authorities. Mr. Chief Justice Jackson, in *Thompson* v. *Spraigue*, 69 Ga. 409 (47 Am. Rep. 760), speaking of the authority of masters of steam vessels to pilot them within bars and up the rivers of a state, says : "If they have such license from the United States authorities to pilot there, then no state law shall require an additional license, and enforce the collection of the fees of a pilot so licensed by the state ; but, if there be no licensed pilot by the United States authority to pilot the steamer within the bar and up the river, then the state law remains of force."

It would seem from these authorities that the master of a tugboat, who had been licensed by authority of the federal government to pilot steam vessels over a bar, into or out of a·port, or upon a river, might exercise a

dominant mind and control while towing upon such
grounds any vessel that was exempt from pilotage dues,
and also, in the absence of any state regulations upon
the subject, might control in like manner while towing
all vessels thereon, in which cases the tugboat com-
manded by him would be liable to the vessels towed for
any injury resulting to them from his want of skill or
care in their management, or his lack of knowledge of
the dangers incident to the navigation. But when a
pilot licensed under state authority assumes command
of a vessel which is subject to compulsory pilotage, he
becomes *ipso facto* the controlling mind of the tow and
its tug (*The Energy*, 3 L. R. Adm. & Ecc. 48), which
necessarily relieves the master of the tug from all duties
towards the tow which the law otherwise enjoins, ex-
cept that of furnishing the motive power.

From these views, I conclude that the court committed
no error in refusing to permit the defendant's license as
a master and pilot of steam vessels under the laws of
the United States to be received in evidence, or in refus-
ing to discharge the defendant, and that the judgment
should be affirmed. My associates, however, are of the
opinion that under the rule of a literal interpretation as
adopted in *Crawford* v. *Linn County*, 11 Or. 482 (5 Pac.
738), the legislative assembly intended to use the word
"pilot" in the act in question in the technical sense
which it had acquired by reason of Lord Tenterden's
definition of the term, and that the conclusion reached
by the court in *Francisco* v. *People*, 4 Park. Cr. R. 139,
is decisive in the case at bar, in view of which the judg-
ment is reversed, and the cause remanded to the court
below, with instructions to discharge the defendant.

REVERSED.

Decided 3 April, 1899.

ON REHEARING.

[56 Pac. 645.]

MR. JUSTICE BEAN delivered the opinion.

The defendant was indicted and convicted for piloting a vessel over the Columbia River pilot grounds without being a licensed pilot, in violation of the act of 1882 : Laws of 1882, p. 15, Hill's Ann. Laws, §§ 3892, *et seq*. The undisputed evidence shows that, at the time complained of, he was the master of a steam towboat engaged in towing a vessel, subject to compulsory pilotage, over the river pilot ground between Astoria and Portland, and the question is whether, under such circumstances, he was a pilot within the meaning of the act referred to, and guilty of violating its provisions. This act was evidently designed to regulate and control an established and recognized business. It does not define the term "pilot" as used therein, and, therefore, it must be taken in the sense ordinarily ascribed to it, that is, one whose business and calling is to take charge and control of a vessel at a particular place for the purpose of conducting or guiding her through a river or channel, or from or into a port : 2 Bouvier's Dic., "Pilot;" *Steamship Co.* v. *Joliffe*, 69 U. S. (2 Wall.), 450. Whether, to be a pilot within the meaning of the statute, it is necessary for the person so taking charge or control of a vessel to be aboard of her, as would seem to be required by the technical definition of that term as sometimes given, is immaterial in this case, because there is a manifest distinction between a pilot and the master of a towboat, and, so far as we have been able to ascertain, it has never been held under pilotage acts

similar to ours that the master of a towboat engaged in moving or towing a vessel is to be deemed a pilot within the meaning of the law. The only adjudged cases in point which either counsel or court has been able to find, after a somewhat extended search, are *People* v. *Francisco*, 10 Abb. Pr. 30 (S. C. 4 Park. Crim. R. 139), and *Doe* v. *Gilbert*, 7 M. & W. 102, in both of which it is held that the master of a towboat engaged in a *bona fide* towage service, is not a pilot within the meaning of statutes substantially the same as ours. So, that even if the technical definition of a pilot, as given by Lord Tenterden, is inapplicable to the act under consideration, the conclusion reached in the former opinion is sound. The petition for a rehearing will therefore be denied.

REHEARING DENIED.

Decided 30 January, 1899.