## THE ELLEN McGOVERN.

*(District Court, S. D. New York.   June 4, 1886.)*

1. TOWAGE—GROUNDING—NEGLIGENCE—BURDEN OF PROOF.
    Where one of a large number of boats in a tow is injured by striking some obstruction on a trip over a common and safe route, the burden is upon the tug to give some rational explanation of the injury or a consistent account of the trip that may satisfy the court that there was no lack of due care in navigation.

2. SAME—CASE STATED—ROBBINS REEF—EVIDENCE—CREDIBILITY OF—TIDES.
    The E. McG. was the port-boat in the hawser tier of a fleet of 20 boats in tow of the Y. A. from Amboy to New York. Before reaching Governor's island the strong ebb-tide compelled the fleet to put in to the sea fence at Red Hook. Shortly afterwards the E. McG. was found leaking, supposed by the master to be caused by bumping against the sea fence. This claim was rejected by the owners of the tug. A month afterwards, on raising the boat, a diagonal cut was found across her bottom, with some holes through, indicating contact with some obstruction as the cause of the leak. On the trial the libelant's wife, who lived on the boat, testified that when passing Robbins reef between 1 and 2 A. M., and very near the light, she felt a jar and subsequent roll that startled her and took her on deck. She did not mention the circumstance till the cut was discovered. *Held*, notwithstanding the discredit arising from her silence in the mean time, as the tug offered no other explanation of the injury, and the accounts given by her captain and pilot as regards her passage from Robbins Reef light to the sea fence and as to the tides and currents were irreconcilable, and the wife's testimony being in accord with the pilot's, her account should be credited as the only rational explanation of the injury; and the tug was held liable.

In Admiralty.

*Edwin G. Davis*, for libelants.

*Biddle & Ward*, for respondents.

BROWN, J.   This libel was filed to recover for the damages done to the libelants' canal-boat, while she was in tow of the tug Young America, caused by running upon some obstruction during a trip from South Amboy to New York.   The tug, with her tow of some 20 boats, meeting with a strong ebb-tide when opposite Red Hook, went in to the sea fence near that point, and reached there between 4 and 5

A. M. Shortly afterwards the libelants' boat was found to be leaking. The libelant at the time supposed that the leak was caused by bumping against the sea fence; and such was his statement then made. This claim was rejected by the respondents, and, as the event proved, rightly. A month afterwards, when the boat was raised and put upon the ways, a mark across her bottom was found, running diagonally from beneath the starboard bow to her port quarter, with several holes cut through the bottom along the way. This libel was thereupon filed, alleging the damage to have occurred from running upon rocks near Robbins Reef light.

There can be no question that the injury to the bottom was the cause of the leak, nor that this injury occurred while the boat was in tow of the Young America on the night in question. The tug is not answerable as an insurer, but only for reasonable care, and ordinary nautical skill. Her trip on that night, however, was over a perfectly safe and familiar course. Thousands of boats are constantly passing over the same course, and there are no obstructions in the way that ought not to be avoided by ordinary care. Such an injury as this to the bottom of one of the fleet in tow is not one of the ordinary incidents of such a trip, and is, at least, not likely to happen with ordinary care and skill. The burden of proof is therefore upon the tug to account for the injury; or to satisfy the court, by a reasonable and consistent account of the trip, that she has not failed in her duty to avoid all dangerous points, and that the injury arose through no lack of due care and skill in her navigation.

The captain's wife has testified with great minuteness concerning the events of the trip, giving many particulars bearing the stamp of undoubted truth, and showing quick observation and a retentive memory. She testifies that somewhere from 1 to 2 o'clock A. M., while reclining in the cabin, she felt a jar, as if the boat was rubbing upon something; that she was startled and went on deck, and saw Robbins Reef light off the port quarter, apparently not more than 100 feet distant, and felt the roll of the boat as it left the obstruction. It was inferred from this testimony that the tug had attempted to go between the buoy and the light, as is sometimes done to avoid a strong ebb in the bay. The captain, however, testifies that the boat went to the southward of the buoy, and not inside of it; that he passed it about 11 o'clock P. M., continued up the bay with the flood current, and met the ebb when he was nearly up to Governor's island, and that he went off duty at 1 A. M., as was his custom.

It was high water the evening before at 9:15 P. M. The currents in the Kills run about true with the almanac time. The surface current in the bay, or the North river tide, as it is called, does not change at once, but continues to run on for about an hour and a half, or, sometimes, as testified to in this case, for two hours after the change of tide at Governor's island, as indicated by the almanac and the height of water. The pilot testifies that he went on duty at 1 o'clock

A. M., and relieved the captain; that "he pulled up the bay for a while, until opposite Red Hook," when finding the tide too strong, and that he was making no headway, he sent word to the captain, and was told to go in to the sea fence; that he did so, and reached it about an hour and a half afterwards, between 4 and 5 o'clock A. M.  From the Robbins Reef buoy to abreast of the Hook is but two nautical miles, and the tow was making at least two knots through the water.  If, therefore, the captain is correct in supposing that he rounded Robbins Reef light, as he says he did, between 10 and 11 P. M., and that he had the benefit of the still continuing slack flood current, as he testified he did have after passing the buoy, Red Hook would have been reached before 12 o'clock, instead of at 3, as the pilot states.

There is no accounting for this three hours' interval of time, or for the difference between the pilot's testimony and the captain's testimony as to this interval.  If the captain had already got near Governor's island when he met the downward current of the ebb-tide, and before the change of the watch at 1 o'clock, the pilot could not after he went on duty have "pulled up awhile" before reaching Red Hook at 3.  The pilot's testimony in this respect is in approximate accord with what the libelant's wife testifies as to the time of passing Robbins Reef light; and if that time be within two hours of correct, the current could not have been running up in the bay at the time when the tow rounded the buoy at Robbins reef, but must have been strong ebb, since it was from three to four hours after high water.

Upon this discrepancy in the testimony of the libelant's chief witnesses as to the navigation, I am not warranted in disregarding the direct and positive testimony of the libelant's wife.  As no charge was made at the time against the navigation of the boat, there was nothing that tended to fix the recollection of the captain and of the lookout in his watch with regard to any particular occurrences of that trip prior to putting into Red Hook.  I must consider, therefore, that, without any intentional misrepresentation, they have testified, not from any precise recollection about rounding the buoy on this trip, but from the picture in their minds of their usual practice, or what they usually do; there being no recollection of any deviation from it.  It was not unusual to go inside the buoy to avoid a strong ebb in the bay.  The scratch may have come from that attempt; or it may be that in going too near the northerly shoals on coming out of the Kills on a strong ebb the libelant's boat touched some slight obstruction on the bottom, while the tug was pulling off strong to the eastward and southward of the buoy,—a position that would equally accord with the wife's testimony.  A rub upon a rock sufficient to make this scratch and cut upon the bottom of the libelant's boat would not be perceived by the tug on a hawser 100 yards away; and, as I have said, it was not mentioned by the wife until a month afterwards.  The pilot, on the other hand, who was obliged to put in to Red Hook, would be likely to remember the particulars of putting in

there, and what led to it; and his testimony should be regarded as coming from a more definite memory in reference to it, and as more likely to be correct; and it is consistent with that of the libelant's wife. Had the latter mentioned at or about that time, either to her husband or to others, what she now testifies that she noticed as to the jar at Robbins Reef light, no doubt would have been entertained concerning the truth of her testimony, or the cause of the accident. That she kept silence about it until the mark was discovered a month afterwards has cast great doubt upon her testimony. But this is not sufficient, under the circumstances, to cause its rejection, in the absence of any other explanation of the injury. The jar as felt was probably far less marked and alarming than it now appears in her testimony. As soon as it was over, no importance probably was attached to it. She was of a nervous and apprehensive temper. She lived upon the boat, and often had experiences that excited momentary alarm, when nothing ill resulted. It was not until the mark and cut were seen in the bottom of the boat a month afterwards that she connected them with the leak as the cause. This view will furnish some explanation, and it is the only rational explanation that occurs to me, for her failure to mention the circumstance at the time. Her account does furnish an explanation of the leak; it harmonizes with the pilot's testimony. Without this we have no explanation of the injury at all. The tug offers no explanation except the mere hypothesis of some entirely unknown obstruction in some other part of the trip. This is too general and speculative to acquit the tug on a trip over a safe and secure route. In the absence of any other explanation, therefore, I feel constrained to hold the tug answerable; not, however, without considerable hesitation and embarrassment, nor without a full recognition of the difficulties of the case, which has been ably presented and argued by the respondent's counsel.

Decree for the libelant, with a reference to compute the damages if not agreed upon.