## THE RESOLUTE.

(District Court, S. D. New York. November 30, 1906.)

TOWAGE—STRANDING OF TOW—LIABILITY OF TUG.

Damage to a cargo of coal laden on a barge belonging to the claimant, by the stranding of the barge in the harbor of New Haven while in tow of claimant's tug, *held* recoverable from the tug; it having failed to sustain the burden of proving its allegation that the stranding was due to an unknown obstruction, either in the main channel or the anchorage grounds of the harbor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, § 34.]

In Admiralty. Suit against tug to recover damage to cargo resulting from stranding of tow.

James J. Macklin, for libellant.

Robinson, Biddle & Ward, for claimant.

ADAMS, District Judge. In this action, the libellant, the Providence-Washington Insurance Company, the assignee of the owners of a cargo of coal laden on the barge H. M. Fuller, seeks to recover from the tug Resolute the loss of or damage to the said cargo caused through the barke striking bottom in New Haven, Connecticut, harbor, while in tow of the tug on a hawser on the 8th day of November, 1904. The tow was bound to Providence, Rhode Island, but went into New Haven harbor on the 7th about 2 o'clock P. M. to remain over night and was anchored there till the morning in question, when the tow started for Providence and the Fuller brought up, causing the damage sued for. The barge was owned by the same corporation as the tug.

The defense in the answer is that the barge grounded upon an unknown obstruction in the regular and usual channel about 11 o'clock A. M., the tide being about high water. On the trial, the testimony of the tug was directed to showing that the accident happened within the anchorage limits defined by the Government on the west side of the channel and not in the usual and regular channel as claimed in the answer. The master testified that the Fuller was alone at the tail of the tow. She was preceded in the tow by 4 other boats, 1 alone ahead of her and 2 alongside of each other next to the tug. Two of the boats, as well as the tug, were drawing about the same water as the Fuller.

It was further testified on the part of the tug that the place of anchorage on the 7th was within the anchorage limits and when, the next morning, the tug started with the tow, she proceeded on a course which for a short distance kept her to the westward of the eastern line of such limits and after going about an eighth of a mile, the Fuller struck and stopped the tow. The tug then anchored the tow and went to the Fuller's assistance but did not succeed in getting her off. Further testimony on the part of the tug is to the effect that it required the efforts of several tugs to relieve the barge, all of whom circled around her without difficulty, there being from 12 to 18 feet of water in her vicinity while she was fast on an obstruction, which was composed of hard sand, gravel and stone, leaving but from 5 to 7 feet of water under her. The position of the barge was also noted from a

place in New Haven which enabled observers there to see water all around her as she lay headed toward the south. The witness from the Resolute said that the tug worked around the barge for nearly an hour on an ebbing tide without touching bottom, even after the water had fallen as much as a foot. It was said that another tug, drawing 12 feet 4 or 5 inches, did the same without experiencing any difficulty. Several witnesses familiar with the waters said that they were astonished to see the barge aground there. It is further urged on behalf of the tug that she had a right to rely upon the Government chart of the place, which gives 16, 17, 18 and 22 feet of water on the grounds at low water, and nothing less than 16.

The libellant contends that the grounding of the barge did not take place in the channel or within the anchorage grounds but in a place to the westward of both, where the bottom was uneven, irregular, and the water shallow, in some places, near at hand as well as under the boat, not being more than about 6 feet in depth. It urges that there is a strong burden of proof upon the claimant here which it has failed to sustain. The testimony of the claimant is criticised with much force and ingenuity and it is said, among other things, that no witness from the tow other than the master of the Resolute was either called or accounted for. It appears that no attempt was made on the first day of the striking to ascertain what the trouble was by sounding or otherwise, or what kind of an obstruction the barge was on. The libellant then enlarges upon the claim set forth in the pleadings, mentioned above, that the cause of the stranding was an unknown obstruction in the channel, when no such claim was made in the testimony, and suggests that if the grounding had taken place in the anchorage ground as stated, there could have been abundant testimony produced to show such fact. It urges also that there is a great improbability of the truth of the allegation in view of the fact of no report having been made of the obstruction to Government officials, so that the difficulty in the harbor could have been remedied. It then proceeds to criticise the testimony adduced by the claimant and urges that some of the witnesses examined really sustained the libellant's claim. It then comments upon the testimony of two persons who were examined upon the part of the libellant and stated that they made soundings at the place which was pointed out to them as that of the grounding and that there was practically no navigable water there.

It appears in the testimony of the master of the Resolute that he was towing 4 boats, 2 alongside of each other nearest the tug and the others following tandem, close up to the boats preceding them, and that all, including the tug, except one of the boats in the head tier, drew the same water as the Fuller and yet none but the latter struck bottom. There was nothing in the set of the tide or the direction of the wind to account for any deviation of the tow from the course pursued by the tug.

The strength of the libellant's case lies in the undisputed grounding of the Fuller and the improbability of such an accident having happened in a dredged anchorage ground which was being constantly used and the proceeding by the tow without the tug or other barges striking. The strength of the claimant's case lies principally in the tes-

timony of several witnesses that the boat was anchored where several tugs, drawing as much water, were able to go all around her without difficulty.

The burden of proving that an unknown obstruction caused the accident, was upon the claimant. The testimony on its part is not reconcilable with other facts in the case. I have not been able to conclude that the burden has been met by the testimony presented.

There will be a decree for the libellant, with an order of reference.