**THE RESOLUTE.**

(Circuit Court of Appeals, Second Circuit. March 10, 1908.)

No. 190.

TOWAGE—STRANDING OF TOW—LIABILITY OF TUG.

A finding affirmed that a tug was liable for damages resulting from the stranding of a barge which she was towing from anchorage in New Haven Harbor, and that the evidence did not sustain the defense that the barge struck an unknown obstruction on the anchorage grounds, but rather indicated that through an error of the master the tug and tow were outside the dredged basin used as the anchorage grounds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, §§ 11–20.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree holding the tug liable for damages resulting from the stranding of a barge which she was towing from anchorage out of New Haven harbor.

For opinion below, see 149 Fed. 1005.

Robinson, Biddle & Benedict (W. S. Montgomery and Roderick Terry, Jr., of counsel), for appellant.

James K. Macklin and La Roy S. Gove, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. Upon the whole case, despite some strong testimony adduced by the claimant, we are inclined to affirm the District Judge. No report was made at the time of the alleged "unknown obstruction on the anchorage ground," and no effort was made to take ranges and determine the exact location, although the barge was stranded for a considerable time. These circumstances cast some measure of doubt on the testimony of those who two years subsequently undertake, from their unaided memory, to locate the stranding on the anchorage ground. The testimony as to location is conflicting, but we are inclined to take the one first marked by the witness Collier— near the south corner of the anchorage ground. If it be so taken, there is a suggestion in the evidence of the master of the tug which may sufficiently account for the stranding. The tow was anchored in the northerly part of the anchorage grounds. The tug, after she got under way, proceeded down towards the southerly end of anchorage intending to proceed thence in the main channel. The stranding occurred before she had reached this southerly end. The chart shows that the anchorage basin is not a parallelogram; it runs alongside the channel for a considerable distance with a uniform width of nearly an eighth of a mile, but to the south its inshore boundary runs at an angle, so that for a considerable distance the dredged basin grows gradually narrower till it reaches its southern end on the edge of the channel. In consequence, a vessel which is proceeding 50 or 60 feet west of the channel will find itself inshore of the boundary of the basin before it has reached the southern end. Now the master of the tug apparently did not so understand the situation. He testified that the anchorage ground was about 300 or 400 feet wide, and that so far as he knew it did not narrow, but "is supposed to be dug all the same width." He might very easily, therefore, have supposed he was on anchorage ground because he had not yet reached the buoy which marked its southerly terminus, when in fact by reason of the gradual reduction of the width both tug and tow were actually inshore of the dredged basin.

The decree is affirmed, with interest and costs.