## THE R. B. LITTLE.

### (Circuit Court of Appeals, Second Circuit. May 8, 1911.)

### No. 271.

**TOWAGE (§ 11*)—INJURY TO TOW—LIABILITY OF TUG.**

A barge in tow alongside of a tug and drawing 12½ feet, while navigating the Harlem River at low water, struck some obstruction, which made a hole in her bottom and sunk her. The river was constantly navigated at the place with safety by boats of such draft, and no obstruction was known or found afterward; whatever caused the injury having apparently been forced into the mud by the vessel. *Held*, that the facts did not charge the tug with any negligence which rendered her liable for the injury.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 17; Dec. Dig. § 11.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by John W. Livingston, owner of the barge Serviss, against the steam tug R. B. Little; John Rugge, Jr., and another, claimants. Decree for respondents, and libelant appeals. Affirmed.

The following is the opinion of Hough, District Judge, in the District Court:

It is not doubted that libelant's coal boat Serviss, while in tow of the Little and properly fastened to the tug's port side, took the bottom in the Harlem River near Spuyten Duyvil Bridge with such severity that she shortly after sank. On being raised, there was a hole in her bottom on her starboard side about 10 feet from her bow and a scratch or scar extending aft therefrom, gradually diminishing in depth toward the stern. At the time the Serviss was drawing about 12½ feet aft and 12 feet forward. The Little was drawing 12 feet or a little more aft, and about 11 feet forward.

Very little help in solving the question presented by the evidence is derived from the pleadings herein. The libel alleges that the coal boat was run upon an obstruction "well known to navigators"; "said obstruction being a very short distance from what is known as 'Johnson's Dock' in the Harlem River." These allegations are plainly not true, for the obstruction was carefully searched for and not found, and although there is much evidence as to lack of water at the place where the Serviss was injured, no one testifies to a well-known rocky obstruction, and, further, whatever it was that did the Serviss injury, it was not near Johnson's Dock. The answer alleges that the river at the place of accident was about 400 feet wide, and that the tug and tow "proceeded up the middle * * * and when 500 or 600 feet past (Spuyten Duyvil Bridge), and *while navigating in the middle*" of the river the Serviss struck an unknown obstruction. These statements are not true, for by all accounts from the claimant the place of stranding is considerably further from Spuyten Duyvil Bridge than is alleged, and no witness from either side has asserted that the Little was navigating in the middle of the river at the time of disaster. This condition of the pleadings compels the court to make such findings from the evidence as it may: it being in my judgment impossible to test or judge the evidence submitted by the pleadings of either party.

Some fundamental propositions regarding the relations of tug and tow must peculiarly be borne in mind in a case of this sort. The tug is not an insurer. It is only bound to the exercise of ordinary care. The mere happening of an accident is not in and of itself proof of negligence (The

Winnie, 147 Fed. 725, 79 C. C. A. 431), and those engaged in the towing business are entitled to rely upon maps and charts of accredited authority (The Nathan Hale, 99 Fed. 462, 39 C. C. A. 604). This last proposition is much relied upon by claimant, yet it must be noted that the charts submitted in this case are very unsatisfactory. They are two in number: The Coast Survey chart, of an ancient date and on a very small scale, and a War Department engineer's survey of 1905, with no date given for the soundings marked thereon, and obviously intended, not as an aid to navigators, but to show the (as yet wholly theoretical) pier and bulkhead lines approved by the Secretary of War in 1890. Any effort to rely upon these maps, (or any other map) is rendered more difficult by the obvious unfamiliarity of every witness produced, with charts of all kinds. It was even plainer in this case than it usually is that most harbor boatmen have no acquaintance with the chart, never study a chart, and do not transact their business by any chart. They work by tradition and rule of thumb.

It is, I think, clearly established that the Serviss did strike some hard object when within 70 or 80 feet of the Manhattan shore and about the same distance to the westward of a bend in the Harlem River known as "Point of Woods." The ordinary bottom of the Harlem River in that region is mud, and it is, I think, a demonstration that the weight of the Serviss must have pressed that hard something which injured her into the mud as she passed over it; for otherwise I am wholly unable to understand how a serious break in the planking forward could have become a trifling scratch aft when the boat was loaded about 6 inches by the stern. The question presented by the evidence becomes, therefore, this: Was the person in charge of the navigation of the Little bound to know that navigation on a 12½ foot draught at low water was dangerous within about 100 feet of the Point of Woods? The distance of 100 feet is stated, because the Little herself is about 17 feet wide, and she was inside the Serviss (i. e., between the Serviss and the Manhattan shore) at the time of injury, and was herself uninjured. This shows that there was no general lack of water at the time and place.

On the question thus presented there is an absolute conflict of testimony. Men apparently of equal skill and equal opportunities of knowledge testify, some that they habitually take 12 feet of water within 15 or 20 feet of the Point of Woods, and others that they never navigate on that side of the channel at all, but keep nearer the Bronx shore, because they have always regarded the Point of Woods as dangerous. In this condition of the evidence recourse may be had to the charts, and without attempting to describe what any one may see at a glance on looking at the chart I am convinced that according to a survey, certainly not later than 1905 (and this accident happened in 1907), the water on the Manhattan side of the river off the Point of Woods is better than that near the Bronx side, and the whole river at this point is within the 15-foot contour lines, except a very narrow passage about 110 feet off the Point of Woods.

It is therefore to me entirely plain that the libelant has not sustained the burden of proof. He has shown an injury, but has not shown what caused the injury. He has not shown any permanent obstruction to navigation at the point where confessedly he was injured, and has not shown by a fair preponderance of evidence that the place where the injury occurred was known or even commonly believed to be dangerous.

For these reasons, the libel must be dismissed, with costs.

James J. Macklin (De Lagnel Berier, of counsel), for appellant.
Carpenter & Park (Samuel Park, of counsel), for appellees.

Before LACOMBE, WARD and NOYES, Circuit Judges.

WARD, Circuit Judge. The barge Serviss, while in tow on the port side of the tug R. B. Little, bound from Fifty-Eighth street, North River, to Kingsbridge, Harlem River, was run upon a rock and sunk. This happened in broad daylight in waters constant-

ly used with safety by vessels drawing as much as the Serviss. The District Judge dismissed the libel.

The record is most unsatisfactory. The pleadings of both parties are concededly untrue as to the place of the accident and in other material allegations. The witnesses are inaccurate, entirely unacquainted with charts and in unusual disagreement. The master of the tug is especially blameworthy for failure to report the accident to the steamboat inspectors, as he was bound by law to do. Inspectors' Rule V (23).

The facts stated make out a prima facie case in favor of the barge and put the burden of explanation on the tug. The Ellen McGovern (D. C.) 27 Fed. 869; The Resolute (D. C.) 149 Fed. 1005, affirmed 160 Fed. 659, 88 C. C. A. 17. But the finding of the District Judge as to the facts amounts to an explanation which frees the tug of fault, and therefore the decree is affirmed, with costs.