## THE ASHBOURNE.

### (District Court, E. D. New York. July 21, 1913.)

1. **Towage (§ 15\*)—Suit for Injury to Tow—Burden of Proof.**

   In a suit against a tug for negligent towage, in permitting the tow to strike an obstruction in the bottom of a slip, the burden of proving that the obstruction was a temporary one, not known to navigators, rests on the tug.

   [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 30–38; Dec. Dig. § 15.\*]

2. **Towage (§ 11\*)—Injury to Tow from Stranding—Liability of Tug.**

   A tug *held* liable for an injury to a tow from striking upon rocks in the bottom of a slip, where the master knew that the slip was shallow near the center, and might have avoided it by careful navigation.

   [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.\*]

In Admiralty. Suit by Alfred G. Trudell against the steam tug Ashbourne; the Philadelphia & Reading Railway Company claimant. Decree for libelant.

James J. Macklin, of New York City, for libelant.
Armstrong & Brown, of New York City, for claimant.

CHATFIELD, District Judge. The tug Ashbourne, the property of the Philadelphia & Reading Railway Company, at about 10:30 p. m., upon the 11th of May, 1911, took a coal boat, the John Mason, belonging to the libelant, with a cargo of coal, to a slip between Pier No. 4 of the Standard Oil Company and a pier of the Tidewater Oil Company, at Bayonne, N. J. The Mason was under charter for the purpose of carrying coal, and on this particular trip the coal on board was to be delivered to a steamer called the Cheyenne. Two lighters at the head of the slip forward of the Cheyenne made it necessary to moor the coal barge outside of these lighters, as the captain of the barge did not then wish to be taken alongside the Cheyenne.

A list was noticed as soon as the barge was moored, which increased as the tide went down, and the barge was found to be "fast." The captain, finding 7 feet of water around the bow and 13 to 17 inches of water inside, was compelled to pump the boat. The next morning she was hauled off by the tug, and subsequent inspection and repairs proved that on the port side aft of amidships 10 of the bottom plank were injured, 4 of them being shoved up inside of the bilge keelson. The libelant alleges that the injury was caused by an obstruction, presumably a rock, well known to mariners using these waters, and therefore to be avoided by any tug undertaking to tow a boat into this slip.

The Mason was loaded with 605 tons of coal, and drew about 9 feet of water. She is 106 feet long, 25 feet wide, and 11 feet sides. A survey of the slip shows a deep berth alongside of the Standard Oil pier, having an average width of about 60 to 75 feet, at the point where the Cheyenne was lying. A shallow area, varying from 13 feet to 5 feet, extends over the middle portion of the slip at the shore end, and

in this, some 200 feet from the Standard Oil pier, the presence of boulders and large stones is indicated. Subsequent dredging is said to have been resorted to for the removal of these boulders, and one of them, of considerable size, is indicated upon the chart. The presence of the Cheyenne and the lighters in the slip make it apparent that the Mason rested upon the bottom at some point in the comparatively shallow area within the 13 feet contour.

[1] The claimant has endeavored to prove that some temporary obstruction, whose presence could not be the basis of a charge of negligent towing, might have caused the accident; but no persuasive proof of such a cause is shown. The burden of proving such an obstruction is upon the tug. The Resolute (D. C.) 149 Fed. 1005, Id., 160 Fed. 659, 88 C. C. A. 17; The Mabel S. (D. C.) 113 Fed. 971.

The claimant's real defense, however, is that, if the Mason went aground at some shallow point in the slip, where a boat of her draft could not safely be navigated, that the Standard Oil Company, which maintains the slip, and which had no marking or buoy to indicate the shoal, would be responsible, as the boat was placed in a berth furnished by them, under conditions known to them, and where they would be liable for placing her in an unsafe position.

After it became apparent that this was the real defense in the case, an adjournment was had until it could be seen whether the obstruction did exist, and whether the Standard Oil Company could be brought in as a party, if the presence of any such obstruction was entirely denied by them. Subsequently a further hearing was had, and the testimony indicates, as has been said, that obstructions did exist. The middle portion of the slip, at its inshore end, was not safe for use by a boat drawing 9 feet of water, unless at high tide.

[2] The real question, therefore, is whether the Ashbourne was negligent in towing the Mason into a slip where dangerous conditions were well known, or should have been known, and where the obligation undertaken was to place the barge alongside the Cheyenne in a safe manner, so as to avoid the obstruction just outside of the ship's berth. If this was the claimant's contract, and the danger were known, then the Ashbourne did not tow the Mason properly, and is responsible for her injury. On the other hand, if the claimant had no actual knowledge of the condition of the slip and the depth of water therein, if the dangers were neither apparent nor matters of common and charted knowledge to navigators, and if the tug was merely taking a barge into a berth furnished by the Standard Oil Company, with the result that the injuries were occasioned by the condition of the berth, then all questions of liability would have to be settled between the owner of the barge and those who maintained the berth, and the right to recovery would depend upon proof that an unsafe berth was furnished.

The testimony shows that the captain of the tug knew that a safe berth lay along the pier and that he could pass alongside the Cheyenne with his tow. He knew that there was an obstruction some distance out, and that the slip was shallower in all parts, except where the Cheyenne was lying. He knew that the barge drew enough water so that it had to be kept in the deep water, and he put the boat alongside the

lighter at the request of the barge captain, and not by direction of the Standard Oil Company. It would seem that the responsibility for getting the boat in safely under such circumstances was on the tug, and that her injury was caused by lack of care on the part of the tug as to conditions which the tug captain knew of and had to be careful about.

The presence of a casual obstruction is not shown. The proof shows an injury by grounding in shoal water on a stone or hard bottom such as existed there.

The libelant may have a decree.