## THE HELEN B. MORAN.

(District Court, E. D. New York. December 13, 1918.)

1. TOWAGE ⚙⇒15(2)—INJURY TO SCOW—EVIDENCE.

Where a scow, in charge of a tug in harbor waters, was injured by striking on the spiles of a bridge, and if the tug had kept in the middle of the channel there would have been 20 feet of clear water on either side, and the same scow had previously passed under the bridge without injury, such facts are sufficient to raise an inference of negligence and support a recovery against the tug.

⚙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. TOWAGE ⚮15(2)—INJURY TO SCOW—BURDEN OF PROOF.

Where there was considerable clearance, and a scow, which was part of a tow and ordinarily should have passed safely under a bridge struck on the spiles on one side, the claimant of the tug, which was libeled, had the burden of proving it was exercising due care in navigation.

In Admiralty. Libel by Nicholas J. Hughes against the steam tug Helen B. Moran, etc. Decree for libelant.

Hyland & Zabriskie, of New York City, for libelant.

Park & Mattison, of New York City, for claimant.

GARVIN, District Judge. A libel has been filed against the tug Helen B. Moran to recover damages sustained by the scow K. C. Lang on April 22, 1917. On that day the tug took a tow of five boats from Brooklyn to Flushing. The Lang was loaded with city ashes, and was the last boat in the tow. There are three bridges near Flushing, and when the tow reached the first of these bridges the tug and the first four boats apparently passed through without injury. The Lang, however, struck the spiles of the bridge on the left side, thus inflicting damage on her starboard side aft; she was being towed stern first. She had been towed through this bridge many times before without difficulty. Some considerable testimony was offered tending to prove that the Lang was in an unseaworthy condition, was unfit for use, and that she was unable to stand the ordinary wear and tear to which a scow would be subject in doing its work in and about the harbor of New York. But this was sharply contradicted, and there is insufficient evidence to charge her with being unseaworthy.

[1, 2] The case is controlled by The Jonty Jenks (D. C.) 54 Fed. 1021, where it is stated, at page 1023:

"If the tug had kept the middle of the cut there would have been 20 feet of clear water on either side. Failure to do this was negligence"—citing The Lady Pike, 21 Wall. 1, 22 L. Ed. 499.

The channel opening where the accident occurred is shown by a map offered without objection before the case was finally submitted. At the same time the libelant offered a report of the department of plant and structures of the city of New York, showing the opening to be 60 feet wide. The boats in the tow were tandem, so there would have been 20 feet of clear water on either side, if the tug had kept the middle of the cut. Nothing appears to indicate that wind or tide conditions prevented this. The burden of proof as to this is on the claimant. The Ellen McGovern (D. C.) 27 Fed. 868.

It is well settled that negligence may, under certain circumstances, be inferable. In The Mason, The Cascade, 249 Fed. 718, ——— C. C. A. ———, it is said by Judge Hough:

"In good weather and harbor waters, the tugs in broad daylight put aground a vessel having at the time no motive power of her own, and completely under the control of the tugs. * * * If negligence is not inferable from such circumstances, it is difficult to imagine anything that could justify the conclusion short of a proven intent to injure another's property."

⚮For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The fact that the boat in question had often been towed through this bridge without difficulty indicates that the accident could have been avoided. The burden of proof is on claimant to explain why such an accident happened, if the tug was using due care in navigation. The Ellen McGovern, supra.

Decree for libelant, with costs.